**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRIENDS OF THE DELAWARE RIVER LLC,**<br>**Plaintiff,**<br>**v.**<br>**MARTELLI'S METAL FABRICATION, INC.,**<br>**Defendant.** | **CIVIL ACTION NO. 25-5806** |

**MEMORANDUM OPINION**

**Rufe, J.** **August 24, 2026**

Plaintiff Friends of the Delaware River LLC brought this action against Defendant Martelli's Metal Fabrication, Inc., alleging that Defendant violated state and federal clean water laws by discharging stormwater without proper permit coverage. Now pending is Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the reasons set forth herein, the Motion will be denied.

## I. BACKGROUND

The following facts are drawn from the Complaint and are taken as true.[1] Plaintiff Friends of the Delaware River LLC is a non-profit organization striving to protect watersheds in Southeastern Pennsylvania.[2] Plaintiff's members live and work in the area of the Delaware River Watershed.[3] They also make use of and recreate in the inflows and outflows of the Watershed.[4] The Watershed encompasses the Little Neshaminy Creek, Neshaminy Creek, and the Delaware

[1] *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Compl. ¶ 9 [Doc. No. 1].

[3] *Id.* ¶ 10.

[4] *Id.*

River.[5] These waters are interconnected—the Little Neshaminy Creek flows into the Neshaminy Creek and from there into the Delaware River.[6] Defendant Martelli's Metal Fabrication, Inc., a Pennsylvania Corporation, owns and operates a roughly 60,000-square-foot metal fabrication facility that performs metal processing, fabrication, and other related activities.[7] This facility is upstream of the Little Neshaminy Creek.[8]

After an investigation, Plaintiff concluded that Defendant's facility contributes to polluted stormwater runoff in the Delaware River. Plaintiff's investigation revealed that Defendant's outdoor storage of industrial machinery, such as metal slabs, dumpsters, refuse, and construction equipment, causes pollutants to be exposed to rainfall.[9] Plaintiff also uncovered that the presence of gasoline, antifreeze, battery fluids, and hydraulic fluids exposes stormwater to contaminants before it flows into municipal storm drains, the Little Neshaminy Creek, and ultimately the Delaware River.[10] Contaminants at Defendant's facility that are known to mix with stormwater include Nitrate + Nitrite-Nitrogen, Total Phosphorus, pH, total suspended solids, and waste oils.[11]

Plaintiff further identifies Defendant's facility as a "Fabricated Structural Metal Facilit[y]"[12] and claims that Defendant failed to obtain the permit coverage required to make its

[5] *Id.*

[6] *See id.* ¶ 13.

[7] *Id.* ¶¶ 15-17, 56.

[8] *Id.* ¶ 13.

[9] *Id.* ¶¶ 58-60.

[10] *Id.* ¶¶ 61-64.

[11] *Id.* ¶ 62.

[12] *Id.* ¶ 18; *see* Pennsylvania Department of Environmental Protection, PAG-03 National Pollutant Discharge Elimination System (NPDES) General Permit for Discharges of Stormwater Associated with Industrial Activity Fact Sheet 5 (2022); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (district court may take judicial notice of government agencies' public documents in evaluating motion to dismiss).

discharge lawful.[13] As background, the Federal Water Pollution Control Act, or "Clean Water Act" ("CWA") for short, requires entities that discharge stormwater "associated with industrial activity" to obtain a National Pollutant Discharge Elimination System ("NPDES") permit.[14] State agencies like the Pennsylvania Department of Environmental Protection ("DEP") administer the NPDES program under authority delegated by the CWA.[15] The DEP recently updated its permit scheme to account for the United States Environmental Protection Agency's ("EPA") Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity.[16] In connection with the DEP permit scheme, Plaintiff alleges that Defendant was obligated to obtain the PAG-03 NPDES General Permit for Discharges Associated with Industrial Activity (the "General Permit").[17] The General Permit requires entities undertaking industrial activities to adopt Best Management Practices ("BMPs"), incorporate technology to reduce stormwater pollution, implement a "Preparedness, Prevention and Contingency Plan" ("PPC Plan"), and monitor compliance through routine recordkeeping.[18] Plaintiff alleges that Defendant did not acquire the General Permit.[19]

On April 3, 2025, in compliance with Section 505 of the Clean Water Act,[20] Plaintiff notified Defendant and administrators of the EPA and DEP of its intent to sue.[21] After the EPA

---

[13] Compl. ¶ 19 [Doc. No. 1].

[14] *Id.* ¶¶ 24-25; 33 U.S.C. § 1342(p).

[15] *Id.* ¶ 42; *see* 33 U.S.C. § 1342(b) (allowing states to create their own NPDES-compliant permit schemes); 25 Pa. Code § 92a.3 (incorporating federal regulations); 25 Pa. Code § 92a.21-36 (setting application procedures); 25 Pa. Code § 92a.53 (development of fact sheet concerning conditions applicable to state NPDES permits).

[16] *Id.* ¶ 45.

[17] *Id.* ¶¶ 2, 18.

[18] *Id.* ¶¶ 47-52; *see* Pennsylvania Department of Environmental Protection, *General Permit Sample*, Part C §§ II-V (available at https://greenport.pa.gov/elibrary//GetFolder?FolderID=738691 (last accessed August 23, 2026)).

[19] *Id.* ¶ 19.

[20] 33 U.S.C. § 1365(b).

[21] *Id.* ¶ 5.

and DEP took no action within the sixty-day waiting period, Plaintiff filed a four-count Complaint under the CWA's citizen enforcement provision.[22]

In the Complaint, filed on October 8, 2025, Plaintiff claims Defendant violated the Clean Water Act ("CWA") and Pennsylvania's Clean Streams Law ("CSL") by discharging stormwater without the proper coverage under the NPDES General Permit (Counts 1 and 2).[23] The Complaint also alleges that Defendant contravened the General Permit's requirements by exceeding effluent limitations (Count 3),[24] failing to develop a PPC Plan (Count 4),[25] and declining to undertake monitoring and recordkeeping (Count 5).[26] Plaintiff seeks declaratory and injunctive relief, and a per diem civil penalty for each violation. Defendant responded by filing a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).[27] The Motion is briefed and ripe for disposition.

## II. LEGAL STANDARD

"When a defendant moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must first consider the defendant's motion under Rule 12(b)(1) because '[w]hether the complaint states a cause of action on which relief could be granted is a question of law . . . [that] must be decided after and not before the court has assumed jurisdiction over the controversy.' "[28]

---

[22] *See* 33 U.S.C. §§ 1365(a)(1), 1362(5).

[23] *Id.* ¶¶ 81-105.

[24] *Id.* ¶¶ 106-14.

[25] *Id.* ¶¶ 115-25.

[26] *Id.* ¶¶ 126-31.

[27] Def.'s Mot. Dismiss Pl.'s Compl. ("Def.'s Mot.") [Doc. No. 7].

[28] *In re Merritt*, 529 B.R. 845, 858 (E.D. Pa. 2015) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)) (alterations and omission in original).

### A. Rule 12(b)(1) Motion to Dismiss

One of Defendant's primary contentions is that Plaintiff lacks standing. A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."[29] Challenges "to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."[30] Defendant does not assert that Plaintiff fails to "comport [factually] with the jurisdictional prerequisites," so Defendant's standing challenge amounts to a "facial attack" of the Complaint rather than a factual one.[31] A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."[32] Courts reviewing facial attacks under Rule 12(b)(1) apply the recognizable standard for Rule 12(b)(6) motions.[33] Namely, the court must consider the material allegations of the complaint and attached documents, and, taking the allegations in the light favorable to the plaintiff, decide whether subject matter jurisdiction exists.[34]

### B. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead a plausible claim for relief, which requires that the plaintiff allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] In analyzing the complaint, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

---

[29] *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

[30] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

[31] *Aichele*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)) (alteration in original).

[32] *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018).

[33] *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

[34] *Id.*

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

reasonable reading of the complaint, the plaintiff may be entitled to relief."[36] However, the Court "need not accept as true unsupported conclusions and unwarranted inferences"[37] or "legal conclusions."[38] The question is not whether the plaintiff will ultimately prevail "but whether [the] complaint [is] sufficient to cross the federal court's threshold."[39]

## III. DISCUSSION

As a threshold matter, Defendant argues that Plaintiff lacks standing. Defendant then challenges the sufficiency of Plaintiff's claims, arguing that Plaintiff failed to allege discharge from a "point source" and that Plaintiff's allegations are overly speculative. The Court addresses each issue below.

### A. Challenge to Standing Under Rule 12(b)(1)

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."[40] A plaintiff must have constitutional standing to generate a case or controversy.[41] To establish constitutional standing, the pleading must illustrate that (1) the plaintiff suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) a causal connection exists between the defendant's conduct and the proffered injury; and (3) there is a likelihood that a judicial decision in the plaintiff's favor would redress the injury.[42]

---

[36] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[37] *Doug Grant, Inc. v. Greate Bay Casino Corp*., 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[38] *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

[39] *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

[40] U.S. Const. art. III, § 2.

[41] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[42] *See Ballentine v. United States*, 486 F.3d 806, 814 (3d Cir. 2007).

Organizations may establish standing based on an injury to the organization itself or to one of its members.[43] Plaintiff adopted the latter strategy. An organization or association "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[44]

The last two prongs of this test are straightforward, as Defendant does not contest either one. First, assuming Plaintiff's members have standing in their own right, the aesthetic and recreational interests they seek to protect align with Plaintiff's mission of safeguarding watersheds in Southeastern Pennsylvania.[45] Second, nothing in this initial record suggests a need for the members' personal participation in the case. The Court turns to the substance of the standing issue: whether Plaintiff's members have standing in their own right.

1. Injury in Fact

To plead an injury, an organizational plaintiff need not demonstrate environmental harm. It is sufficient to show that increased pollution interferes with the members' interests.[46] Indeed, a claim that the members' aesthetic and recreational interests are impaired will suffice.[47]

Here, Plaintiff pled that its members suffered a concrete, particularized, and actual injury to aesthetic and recreational interests. According to Plaintiff, its members live, work, travel near,

---

[43] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

[44] *New Jersey Coal. pf Auto. Retailers, Inc. v. Mazda Motor of Am., Inc.*, 957 F.3d 390, 392 (3d Cir. 2020) (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

[45] *See* Compl. ¶ 9 [Doc. No. 1].

[46] *See Sierra Club v. United States Env't Prot. Agency,* 972 F.3d 290, 298-99 (3d Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

[47] *See Friends of the Earth*, 528 U.S. at 181-85.

and recreate in proximity to the Delaware River Watershed.[48] These members, Plaintiff notes, use and enjoy the Little Neshaminy Creek, Neshaminy Creek, the Delaware River, and their inflows and outflows "for recreational, educational, scientific, conservation, aesthetic, spiritual, and other purposes."[49] They allege that their enjoyment was impaired by pollution, evidenced by visible discoloration and unpleasant odor, that has degraded the beauty and utility of the watershed.[50] Plaintiff has plausibly alleged an injury-in-fact to its members.

2. Causation

The subsequent requirement for Article III standing is causation, which the Third Circuit has also referred to as "traceability."[51] This inquiry "focuses on *who* inflicted [the] harm. The plaintiff must establish the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury."[52] The connection between conduct and injury "need not be as close as the proximate causation needed to succeed on the merits of a tort claim . . . . [A]n indirect causal relationship will suffice."[53]

In the Complaint, Plaintiff alleges that Defendant's discharge of polluted stormwater affects its members' use and enjoyment of the Delaware River Watershed.[54] Plaintiff conceives the following causal chain: first, Defendant operates a "Fabricated Structural Metal Facility" which requires NPDES permitting due to the propensity for industrial activities to generate

[48] Compl. ¶ 10 [Doc. No. 1].

[49] *Id.*

[50] *Id.* ¶ 12.

[51] *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d. Cir. 2009).

[52] *Id.* at 142 (emphasis in original).

[53] *Id.*

[54] Compl. ¶¶ 10-13 [Doc. No. 1].

pollutants;[55] second, Defendant failed to obtain the General Permit required under the NPDES program and thereby failed to take mandatory measures to counteract pollution from wastewater discharge; (3) industrial activities associated with Defendant's facility produce pollutants that mix with rainwater and flow into municipal storm drains;[56] (4) the polluted rainwater flows into tributaries, eventually emptying in the Delaware River Watershed;[57] and (5) Plaintiff's members' use and enjoyment of the Watershed is affected by the pollution of the Watershed.[58] This chain suffices to establish a fairly traceable causal connection between Defendant's conduct and the alleged injury. Causation is satisfied at this preliminary juncture.

3. <u>Redressability</u>

By the same token, Plaintiff pled enough facts to show redressability. To identify a redressable injury, a plaintiff must show that she "personally would benefit in a tangible way from the court's intervention."[59] As noted, Plaintiff claims that Defendants' failure to manage stormwater discharge negatively impacted its members' use and enjoyment of the Watershed.[60] Plaintiff, in turn, seeks an injunction enjoining violations of the CWA, which would involve directing Defendant to obtain proper permitting or to cease stormwater discharge altogether. Taking the allegations as true, either outcome would prevent pollutants from entering the

---

[55] *Id*. ¶¶ 55-57.

[56] *Id.* ¶ 64.

[57] *Id.*

[58] *Id.* ¶¶ 12-13.

[59] *Warth v. Seldin*, 422 U.S. 490, 508 (1975).

[60] Compl. ¶¶ 10-13 [Doc. No. 1].

Watershed, incrementally lessening the impairment of Plaintiff's use and enjoyment.[61] Plaintiff has come forward with a redressable injury.

Plaintiff asserted the elements for standing based on an injury to its members. The Motion will be denied to the extent it seeks dismissal for lack of standing.

**B. Failure to State a Claim Pursuant to Rule 12(b)(6)**

1. Discharge into Navigable Waters from a "Point Source"

Defendant suggests that Plaintiff's claims are invalid because Plaintiff failed to plead discharge from a "point source."[62] The Court disagrees.

Absent compliance with permitting requirements, "the discharge of any pollutant by any person [is] unlawful."[63] A pollutant discharge is the "addition of any pollutant to navigable waters from any point source,"[64] with "point source" defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."[65] Mindful that Congress intended for the CWA to "eliminate pollution from the nation's waters," courts read "point source" broadly.[66] Of note, "[t]he concept of a point source was designed to . . . embrace[] the

---

[61] *Id.* ¶ 14; *see Delaware Riverkeeper Network v. Soil Safe, Inc.*, No. 14-1349, 2017 WL 2829603, at *10 (D.N.J. June 30, 2017) (relief that "provid[ed] at least some incremental benefit" made the injury redressable (internal quotation marks omitted)).

[62] Mem. L. Supp. Def.'s Mot. Dismiss ("Def.'s Mem. L.") at 3 [Doc. No. 7-1].

[63] 33 U.S.C. § 1311(a) (apart from the NPDES permitting requirements in 33 U.S.C. § 1342, pollutant discharges are lawful only to the extent in compliance with sections 1312, 1316, 1317, 1328 and 1344).

[64] 33 U.S.C. § 1362(12).

[65] 33 U.S.C. § 1362(14).

[66] *United States v. Earth Sciences, Inc.*, 599 F.2d 368, 373 (10th Cir. 1979); *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 309 (3d Cir. 1997).

broadest possible definition of any identifiable conveyance from which pollutants might enter the waters of the United States."[67]

In this case, Plaintiff claims that contaminated stormwater at Defendant's facility flows into Little Neshaminy Creek, and eventually the Delaware River, through municipal storm drains—a mechanism that falls comfortably within the class of channels or conveyances that are point sources.[68] Moreover, "[t]he Delaware River readily qualifies as a 'navigable water,' "[69] and the contaminants alleged—such as Nitrate + Nitrite-Nitrogen, Total Phosphorus, and waste oils—fit the definition of "pollutant."[70] Plaintiff adequately pled that Defendant discharged pollutants into navigable waters from a point source.

2. Sufficiency of Claims

Last, Defendant asserts that Plaintiff's claims are overly speculative. However, this is overstated. Plaintiff's well-pleaded allegations, accepted as true, are sufficient to make it plausible that Defendant is liable for the alleged misconduct.

Plaintiff's first claim asserts that Defendant violated the CWA,[71] and corresponding provisions of the CSL and its implementing regulations,[72] by failing to obtain a NPDES permit for stormwater discharge.[73] "[T]o establish a violation of the CWA pursuant to Sections 1311(a)

---

[67] *West Indies Transport*, 127 F.3d at 309 (quoting *Earth Sciences*, 599 F.2d at 373).

[68] *Greater Yellowstone Coal. v. Lewis*, 628 F.3d 1143, 1152-53 (9th Cir. 2010) (holding that a "stormwater drain system" is "exactly the type of collection or channeling contemplated by the CWA" point source requirement); *United States v. Ortiz,* 427 F.3d 1278, 1281 (10th Cir. 2005) (finding that a drain flowing into a river is a point source); *United States v. Agosto-Vegau,* 617 F.3d 541, 550 (1st Cir. 2010) (classifying a storm sewer that flowed into a creek as a point source).

[69] *Del. Dep't. of Nat. Res. & Env't Control v. U.S. Army Corps of Eng'rs*, 685 F.3d 259, 279 (3d Cir. 2012).

[70] *See* 33 U.S.C. § 1362(6) (listing pollutants).

[71] *See* 33 U.S.C. § 1311(a); 33 U.S.C. § 1342.

[72] *See, e.g.*, 35 P.S. § 691.301; 35 P.S. § 691.611; *see also* 25 Pa. Code § 92a.1(b) ("A person may not discharge pollutants from a point source into surface waters except as authorized under an NPDES permit.").

[73] Compl. ¶¶ 81-93 [Doc. No. 1].

and 1342, courts have instructed that 'a plaintiff must prove that the defendant (1) discharged (2) a pollutant (3) into navigable waters (4) from a point source (5) without a permit.' "[74] Based on the definitions and analysis from the subsection above, the Court infers that Defendant's factual allegations establish the first four elements. As for the fifth, Plaintiff asserts that Defendant's industrial activities, including metal processing, fabrication, sandblasting, and storage of fuel and oils, and maintenance activities like electrical work and plumbing, place Defendant under Pennsylvania Standard Industrial Classification ("SIC") Code 3441.[75] That classification, Plaintiff asserts, requires Defendant to obtain coverage under the PAG-03 NPDES General Permit for Discharges Associated with Industrial Activity (the "General Permit"), issued under the authority delegated by the CWA—to be compliant with the CWA's NPDES program. By alleging that Defendant failed to acquire the General Permit, Defendant pled facts establishing the final element for a CWA claim.[76]

Defendants' cursory arguments to the contrary are unavailing. For one, although Defendant criticizes Plaintiff's lack of water-quality testing and empirical data,[77] that evidentiary rigor is premature at the pleading stage. At any rate, Plaintiff pled that Defendants' stormwater flows in the vicinity of various on-site pollutants, so, drawing reasonable inferences and taking the allegations as true, it is not far-fetched to say that Defendant discharged polluted

[74] *Talker v. Monroe Cnty.*, No. 24-cv-2118, 2026 WL 1459901, at *3 (M.D. Pa. Feb. 18, 2026) (quoting *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1141-42 (10th Cir. 2005)); *see also Nat'l Wildlife Fed'n v. Gorsuch*, 693 F.2d 156, 165 (D.C. Cir. 1982).

[75] Compl. ¶¶ 17-18 [Doc. No. 1].

[76] It stands to reason that, to the extent Defendant allegedly discharged stormwater in violation of the NPDES program, that claim is equally valid under the CSL provisions cited by Plaintiff. *See, e.g.*, 35 P.S. § 691.301 (prohibition on discharge of industrial wastes "except as hereinafter provided in this act"); 25 Pa. Code § 92a.1(b) (prohibition on discharge of pollutants into surface waters without a NPDES permit).

[77] Def.'s Mem. at 3-4 [Doc. No. 7-1].

stormwater.[78] In addition, Defendant references "underground stormwater retention basins" that supposedly prevent stormwater from entering the drainage system.[79] But, that too, raises an issue of evidentiary proof that the parties can explore in discovery. For the foregoing reasons, the Motion will be denied as to the first claim.

Finally, in claims two through five, Plaintiff essentially alleges that, by failing to obtain stormwater discharge coverage under the General Permit, Defendant violated NPDES standards that the permit coverage would have imposed. Those alleged violations are of the requirements to limit effluent discharge, including through the installation of the "Best Conventional Pollutant Control Technology" (Count 3); to institute a PPC Plan (Count 4); to conduct recordkeeping (Count 5); and to avoid discharges that generally contravene the prohibitions in the General Permit (Count 2).[80] Since Plaintiff identified specific components of the General Permit that Defendant potentially abridged, and since Defendant does not challenge these counts individually, the Court will deny the Motion as to these counts and allow the factual record to develop.

## IV. Conclusion

For the reasons above, the Court will deny Defendant Martelli's Metal Fabrication, Inc.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). An order follows.

---

[78] Moreover, to allege a NPDES permitting violation under the CWA, Plaintiff need not prove a precise quantum of environmental harm. *See Pub. Interest Rsch. Grp. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 73 n.10 (3d Cir. 1990). It is only necessary to show that the permit scheme was violated. *See United States v. Pozsgai*, 999 F.2d 719, 725 (3d Cir. 1993).

[79] Def.'s Mem. L. at 1 [Doc No. 7-1].

[80] Pennsylvania Department of Environmental Protection, *General Permit Sample*, Part C §§ II-V (available at https://greenport.pa.gov/elibrary//GetFolder?FolderID=738691 (last accessed August 23, 2026)).